IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-352

No. COA20-24

Filed 20 July 2021

Columbus County, No. 13 CRS 050656

STATE OF NORTH CAROLINA

v.

GERALD LAMONT HEMINGWAY, Defendant.

Appeal by Defendant from judgment entered 14 August 2019 by Judge Douglas B. Sasser in Columbus County Superior Court. Heard in the Court of Appeals 22 September 2020.

*Attorney General Joshua H. Stein, by Assistant Attorney General Narcisa Woods, for the State.*

*Yoder Law PLLC, by Jason Christopher Yoder, for defendant-appellant.*

MURPHY, Judge.

¶ 1   The trial court could not revoke Defendant's probation solely for a positive drug test. However, the trial court did not abuse its discretion when it revoked his probation for a violation of N.C.G.S. § 15A-1343(b)(1). There is sufficient evidence in the Record to support the trial court's finding that Defendant committed new criminal offenses in violation of N.C.G.S. § 15A-1343(b)(1).

¶ 2 Before denying Defendant the opportunity to confront and cross examine an adverse witness, the trial court must make a finding of good cause pursuant to N.C.G.S. § 15A-1345(e). When the trial court does not exercise its discretion, we cannot determine whether it abused its discretion and the case must be remanded to the trial court for further findings. Here, based upon our review of the Record, it does not appear as though the trial court exercised its discretion in determining whether good cause exists.

## BACKGROUND

¶ 3 In August 2017, Defendant Gerald Lamont Hemingway pled guilty to one count of possession with intent to sell or distribute marijuana. Defendant was sentenced to 8 to 19 months in prison and his sentence was suspended for 24 months of supervised probation. As part of the standard conditions of his probation (AOC-CR-603C), Defendant was not to commit any criminal offense in any jurisdiction and Defendant could "[n]ot use, possess, or control any illegal drug or controlled substance unless it ha[d] been prescribed for [him] by a licensed physician and [was] in the original container with the prescription number affixed on it[.]" *See* N.C.G.S. § 15A-1343(b)(15) (2019).

¶ 4 The State alleged Defendant violated the conditions of his probation in two violation reports by (1) committing new criminal offenses; and (2) testing positive for cocaine. Paragraph 3 of the *Violation Report* dated 20 March 2018 alleges:

Of the conditions of probation imposed in that judgment, [Defendant] has willfully violated:

. . .

3. General Statute 15A-1343(b)(1) "Commit no criminal offense in any jurisdiction" in that [Defendant] HAS THE FOLLOWING CHARGES THAT ARE VIOLATIONS OF [Defendant's] CURRENT PROBATION: 18CR050542 FELONY POSSESSION OF COCAINE, MAINTAIN VEH/DWELL/PLACE CS (F) OFFENSE DATE [13 March 2018];

18CR050550 (F) CONSPIRE TO TRAFFIC IN COCAINE OFFENSE DATE [13 March 2018]

18CR050551 (F) SELL COCAINE, MAINTAIN VEH/DWELL/PLACE CS (F)
OFFENSE DATE [12 March 2018]

18CR050552 (F) SELL COCAINE, MAINTAIN VEH/DWELL/PLACE CS (F)
OFFENSE DATE [12 March 2018]

18CR050557 (F) CONSPIRE TO TRAFFIC COCAINE
(F) CONSPIRE TO TRAFFIC COCAINE OFFENSE DATE [13 March 2018]

18CR050558 (F) SELL OR DELIVER COUNTERFEIT CS (F) PWISD COUNTERFEIT CS OFFENSE DATE [13 March 2018]

Paragraph 1 of the *Violation Report* dated 4 April 2018 alleges:

Of the conditions of probation imposed in that judgment, [Defendant] has willfully violated:

1. Condition of Probation "Not use, possess or control any illegal drug or controlled substance unless it has been

> prescribed for [Defendant] by a licensed physician and is in the original container with the prescription number affixed on it . . ." in that
> [Defendant] TESTED POSITIVE FOR COCAINE ON [4 April 2018].

¶ 5   A properly noticed probation violation hearing was held on 14 August 2019. At the probation violation hearing, Probation Officer Amy Cartrette ("Cartrette") testified Defendant tested positive for cocaine on 4 April 2018, but Defendant had denied using cocaine. Lieutenant Barett Thompson ("Lieutenant Thompson") also testified about two purchases he initiated with Defendant through a paid informant. The paid informant did not testify at the probation violation hearing.

¶ 6   Both purchases occurred on 12 March 2018. After meeting with Defendant at his residence, the paid informant returned to a predetermined area to meet Lieutenant Thompson. Lieutenant Thompson and other officers searched the paid informant and found a "white powder substance" from the "agreed-upon transaction between the [paid informant] and the target, [Defendant]." Later in the afternoon on 12 March 2018, the paid informant went back to Defendant's residence to conduct a second purchase.

¶ 7   These purchases were used as the basis for obtaining a search warrant for Defendant's house, where Lieutenant Thompson found

> a pair of pants that [Defendant] stated were his pants. They contained $625[.00] in cash in the pocket. Located in the bathroom were three small off-white rocks and a small

> bag of green leafy substance. . . . All the evidence was placed in the Evidence of Columbus County Sheriff's Office, and $500[.00] of the $625[.00] in the pants pocket matched the source buy money used from the day before.

Defendant was subsequently charged with possession of cocaine, possession of marijuana, maintaining a dwelling place, and sale and delivery of cocaine.

¶ 8    The trial court revoked Defendant's probation, finding:

> 3. The condition(s) violated and the facts of each violation are as set forth . . .
>
> a. In Paragraph(s) 3 of the Violation Report or Notice dated [20 March 2018].
>
> b. In Paragraph(s) 1 of the Violation Report or Notice dated [4 April 2018].
>
> . . .
>
> 4. Each of the conditions violated as set forth above is valid; [Defendant] violated each condition willfully and without valid excuse; and each violation occurred at a time prior to the expiration or termination of the period of [Defendant]'s probation.
>
> Each violation is, in and of itself, a sufficient basis upon which this [c]ourt should revoke probation and activate the suspended sentence.

¶ 9    According to the trial court's written findings, Defendant's probation was revoked for (1) committing new criminal offenses and (2) testing positive for cocaine. However, at the probation revocation hearing, the judge orally stated "[t]he basis of the revocation is that [Defendant] has committed a new criminal offense." Defendant

timely appealed and requests the judgment be vacated and his case be remanded for a new probation revocation hearing.

## ANALYSIS

¶ 10    Defendant argues the trial court erred in revoking his probation and he is entitled to a new probation violation hearing. Specifically, Defendant argues pursuant to the Justice Reinvestment Act ("JRA"), 2011 N.C. Sess. Laws 192, his probation cannot be revoked solely for a positive drug test; there was insufficient evidence for the trial court to conclude Defendant had committed new crimes, namely the sale, delivery and/or possession of illegal narcotics; and he was deprived of his constitutional right to confrontation pursuant to the Due Process Clause, as well as his statutory right to confrontation in a probation revocation hearing pursuant to N.C.G.S. § 15A-1345(e).

### A. Positive Drug Test

¶ 11    We agree with Defendant in that the trial court "erred in revoking [his] probation after finding that [Defendant] 'tested positive for cocaine on [4 April 2018].'"

> To revoke a defendant's probation, the trial court need only find that the defendant has willfully violated a valid condition of probation or that the defendant has violated without lawful excuse a valid condition upon which the sentence was suspended. Additionally, once the State has presented competent evidence establishing a defendant's failure to comply with the terms of probation, the burden is on the defendant to demonstrate through competent evidence an inability to comply with the terms. If the trial

> court is then reasonably satisfied that the defendant has violated a condition upon which a prior sentence was suspended, it may within its sound discretion revoke the probation.

*State v. Stephenson*, 213 N.C. App. 621, 624, 713 S.E.2d 170, 173 (2011) (internal citations and marks omitted). Further, pursuant to the JRA,

> for violations occurring on or after 1 December 2011, the trial court may only revoke a defendant's probation where the defendant (1) commits a new criminal offense in violation of [N.C.G.S.] § 15A-1343(b)(1); (2) absconds by willfully avoiding supervision or by willfully making the defendant's whereabouts unknown to the supervising probation officer, in violation of [N.C.G.S.] § 15A-1343(b)(3a); or (3) violates any condition after previously serving two periods of confinement in response to violations ("CRV") pursuant to [N.C.G.S.] § 15A-1344(d2).

*State v. Krider*, 258 N.C. App. 111, 113-14, 810 S.E.2d 828, 830, *modified and aff'd per curiam,* 371 N.C. 466, 818 S.E.2d 102 (2018) (internal citations and marks omitted); *see* Justice Reinvestment Act, 2011 N.C. Sess. Laws 192. "For all other violations, the trial court may either modify the conditions of the defendant's probation or impose a 90-day period of CRV." *Id.* at 114, 810 S.E.2d at 830.

¶ 12    N.C.G.S. § 15A-1343(b) sets out regular conditions of probation that "apply to each defendant placed on supervised probation unless the presiding judge specifically exempts the defendant from one or more of the conditions in open court and in the judgment of the court[,]" including:

(b) Regular Conditions. -- As regular conditions of probation, a defendant must:

(1) Commit no criminal offense in any jurisdiction.

. . .

(15) Not use, possess, or control any illegal drug or controlled substance unless it has been prescribed for him or her by a licensed physician and is in the original container with the prescription number affixed on it; not knowingly associate with any known or previously convicted users, possessors, or sellers of any such illegal drugs or controlled substances; and not knowingly be present at or frequent any place where such illegal drugs or controlled substances are sold, kept, or used.

N.C.G.S. § 15A-1343 (2019).

¶ 13 While at the probation revocation hearing, the judge orally stated "[t]he basis of the revocation is that [Defendant] has committed a new criminal offense[,]" the trial court's written findings found Defendant's probation was revoked for (1) committing new criminal offenses and (2) testing positive for cocaine. "[I]f there is some conflict between oral findings and ones that are reduced to writing, the written order controls for purposes of appeal." *State v. Johnson*, 246 N.C. App. 677, 684, 783 S.E.2d 753, 759 (2016); *see Durham Hosiery Mill Ltd. P'ship v. Morris*, 217 N.C. App. 590, 593, 720 S.E.2d 426, 428 (2011) ("The general rule is that the trial court's written order controls over the trial judge's comments during the hearing."). Accordingly, the written order controls and our analysis is based on the trial court revoking

Defendant's probation for committing new criminal offenses in violation of N.C.G.S. § 15A-1343(b)(1) *and* testing positive for cocaine in violation of N.C.G.S. § 15A-1343(b)(15).

¶ 14 Defendant is correct that pursuant to the JRA, his probation cannot be revoked solely for his violation of N.C.G.S. § 15A-1343(b)(15).[1] However, Defendant's probation may have been properly revoked where there was sufficient evidence to show Defendant committed new crimes in violation of N.C.G.S. § 15A-1343(b)(1). *See Krider,* 253 N.C. App. at 113-14, 310 S.E.2d at 830 ("[T]he trial court may . . . revoke a defendant's probation where the defendant . . . commits a new criminal offense in violation of [N.C.G.S.] § 15A-1343(b)(1)[.]").

¶ 15 Although the trial court's order indicated "[e]ach violation is, in and of itself, a sufficient basis upon which this [c]ourt should revoke probation and activate the suspended sentence[,]" Defendant's positive drug test, "in and of itself," is not a sufficient basis upon which the trial court could revoke probation. The trial court's finding this violation is adequate to revoke probation is reversed.

---

[1] In his brief, Defendant also contends "the trial court lacked jurisdiction to revoke [Defendant's] probation based on the violations alleged in paragraph one of the [4] April 2018 violation report." The trial court was certainly without statutory authority to revoke his probation merely for a positive drug test. However, the lack of authority to invoke a certain remedy does not impact the trial court's jurisdiction over the alleged probation violation. The improper use of an unauthorized remedy is an error of law, reviewable and correctable on appeal, which does not equate to the power of the trial court to act in the first place. Defendant's argument as to lack of jurisdiction is without merit.

## B. New Criminal Offenses

Defendant argues there was insufficient evidence for the trial court to conclude he committed new criminal offenses in violation of N.C.G.S. § 15A-1343(b)(1). Alternatively, Defendant argues if there was sufficient evidence of a violation of N.C.G.S. § 15A-1343(b)(1), he is entitled to a new probation revocation hearing because there was a violation of the right(s) to confrontation.

### 1. Sufficiency of Evidence

First, Defendant argues it was error to revoke his probation for commission of new criminal offenses, namely sale, delivery and/or possession of illegal narcotics, because the evidence presented in this case was insufficient to both link Defendant with the substances seized from his home, and to show that any of the substances purportedly connected to him were actually cocaine. We disagree.

Relying on the United States Supreme Court decision in *Gagnon v. Scarpelli*, our Supreme Court has held "[a] probation revocation proceeding is not a formal criminal prosecution, and probationers thus have 'more limited due process rights.'" *State v. Murchison*, 367 N.C. 461, 464, 758 S.E.2d 356, 358 (2014) (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 789, 36 L. Ed. 2d 656, 666 (1973), *superseded by statute*, Parole Commission and Reorganization Act, Pub. L. No. 94-223, 90 Stat. 228 (1976)). "Consistent with this reasoning, [our Supreme Court has] stated that 'a proceeding to revoke probation is not a criminal prosecution' and is 'often regarded as informal

or summary.'" *Id.* (quoting *State v. Hewett*, 270 N.C. 348, 353, 154 S.E.2d 476, 479 (1967)). In addition, "[f]ormal rules of evidence do not apply" in probation revocation hearings. N.C.G.S. § 15A-1345(e) (2019). "Similarly, our Rules of Evidence, other than those concerning privileges, do not apply in proceedings for 'sentencing, or granting or revoking probation.'" *Murchison,* 367 N.C. at 464, 758 S.E.2d at 358 (quoting N.C.G.S. § 8C-1, Rule 1101(b)(3) (2013)). Accordingly, the trial court has "great discretion to admit any evidence relevant to the revocation of [the] defendant's probation." *Id.* at 465, 758 S.E.2d at 359 (internal citations and marks omitted).

¶ 19        The following testimony occurred at Defendant's probation revocation hearing:

> [THE STATE]: Lieutenant Thompson, on [12 March] 2018, at approximately 12:00 in the afternoon, did you and other detectives with the Narcotics Unit conduct a [purchase] with [Defendant] as the target?
>
> [LIEUTENANT THOMPSON]: Yes, ma'am.
>
> [DEFENSE COUNSEL]: Objection.
>
> THE COURT: Wish to be heard?
>
> [DEFENSE COUNSEL]: No.
>
> THE COURT: Overruled.
>
> [THE STATE]: Can you tell the [c]ourt about that?
>
> [LIEUTENANT THOMPSON]: Yes, ma'am. The source of information was met; searched; the vehicle was searched; given money from source buy funds; followed; watched go to [Defendant's] target location; watched whenever they

left; followed back to the predetermined staging area. At that point in time, they were searched again, along with the conveyance, and the evidence was turned over to myself by the source of information.

[THE STATE]: Were there source buy funds given to the [paid informant] in this case?

[LIEUTENANT THOMPSON]: Yes, ma'am.

. . .

[THE STATE]: And did [the paid informant] return and turn over any contraband or evidence to the detectives?

[LIEUTENANT THOMPSON]: Yes, ma'am.

[THE STATE]: And what was seized?

[LIEUTENANT THOMPSON]: A white powder substance.

[THE STATE]: Okay. And was that what was the agreed-upon transaction between the [paid informant] and the target, [Defendant]?

[LIEUTENANT THOMPSON]: Yes, ma'am.

. . .

[THE STATE]: Okay. All right. And can you tell the [c]ourt about the second transaction.

[LIEUTENANT THOMPSON]: Yes, ma'am. [The paid informant] was met, predetermined staging area outside the town of Chadbourn; again, source of information, vehicle was searched by myself; money was provided by -- from the source buy funds of $1,000[.00]. Again, the source of information was followed to the target location; watched turn in; watched when they left the target area; followed

back to the predetermined location. The evidence at that time was turned over to myself. The source of information and the vehicle were searched again.

[THE STATE]: Okay. And was that evidence that was turned over to you consistent with what was discussed as to the buy concerning [Defendant]?

[LIEUTENANT THOMPSON]: Yes ma'am.

[THE STATE]: That it was prearranged that the [paid informant] was going to buy from [Defendant]?

[LIEUTENANT THOMPSON]: Yes, ma'am.

. . .

[LIEUTENANT THOMPSON]: . . . [Paid informant] went into the residence with [Defendant]. [Defendant] asked [the paid informant] what she needed. [The paid informant] advised two ounces of powder. [Defendant] then got the powder and told [the paid informant] that was all he had and also gave [the paid informant] some crack for $1,000[.00]. [The paid informant] also gave [Defendant] $1,000[.00] for the powder and the crack.

¶ 20        Through this testimony, the State presented sufficient evidence to link Defendant with the substances seized from his home. Lieutenant Thompson's testimony illustrates the following facts: he executed two separate purchases between Defendant and the paid informant; the paid informant told him she purchased "powder and [] *crack*" from Defendant during the purchases; he obtained and executed a search warrant the day after the purchases at Defendant's residence and seized three small off-white rocks from Defendant's bathroom and $625.00 from Defendant's

pants pocket; $500.00 of the $625.00 found in Defendant's pants pocket matched the serial numbers of the money provided for the purchases; he searched the paid informant and the vehicle she rode in to meet Defendant before and after each purchase and confirmed the paid informant had no illegal substances on her person before the purchases occurred; and he followed the paid informant to and from Defendant's residence and confirmed the paid informant made no stops.

¶ 21    While we agree with Defendant that the testimony as to "powder" and "off-white rocks" would not be sufficient, we hold the evidence as to "crack," which was not opposed to on appeal, constituted sufficient evidence of a controlled substance, namely cocaine as defined in N.C.G.S. § 90-90.  N.C.G.S. § 90-90(1)(d) (2019) ("The following controlled substances are included in [Schedule II controlled substances]: . . . [c]ocaine[.]").  The hearsay evidence of the paid informant was relevant for determining whether Defendant had violated a condition of his probation by committing a criminal offense.  *See* N.C.G.S. § 15A-1343(b)(1) (2019).  Lieutenant Thompson's testimony was sufficient to show Defendant committed a new criminal offense, specifically the sale and/or delivery of cocaine in violation of N.C.G.S. § 90-95(a)(1).  *See* N.C.G.S. § 90-95(a)(1) (2019) (making it unlawful "[t]o manufacture, sell or deliver, or possess with intent to sell or deliver, a controlled substance[.]").

## 2. Confrontation

### a. No Sixth Amendment Right

¶ 22 Defendant argues he has both a constitutional right to confrontation and a statutory right to confrontation. However, a Sixth Amendment right to confrontation in a probation revocation hearing does not exist. *See State v. Braswell*, 283 N.C. 332, 337, 196 S.E.2d 185, 188 (1973) (holding a hearing to determine whether the terms of a suspended sentence have been violated is not a criminal prosecution and therefore protections of the Sixth Amendment are inapplicable to adult probation revocation proceedings). Defendant's constitutional argument, to the extent it sounds in due process, collapses into his statutory argument below because N.C.G.S. § 15A-1345(e) codifies the due process requirements concerning confrontation in probation revocation hearings. *See State v. Hunter*, 315 N.C. 371, 377, 338 S.E.2d 99, 104 (1986) ("[N.C.G.S. § 15A-1345(e)] guarantees notice, bail, a preliminary hearing and a revocation hearing with counsel present. At the revocation hearing, the trial judge must make findings to support his decision on whether to revoke or extend probation. He must also make a summary record of the proceedings. . . . [T]he statute guarantees full due process before there can be a revocation of probation and a resulting prison sentence."); *see also* N.C.G.S. § 15A-1345(e) (2019).

**b. Statutory Right**

¶ 23 Defendant further argues the trial court erred in failing to find good cause before denying him an opportunity to confront and cross-examine Lieutenant Thompson's paid informant, an adverse witness, as required by N.C.G.S. § 15A-

1345(e) and "asks this Court to vacate the judgments revoking probation and remand his case for a new revocation hearing." As the trial court did not exercise its discretion in determining whether good cause exists for denying Defendant the right to confront the paid informant, we remand for reconsideration of the good cause issue.

¶ 24 N.C.G.S. § 15A-1345(e) provides that at a probation revocation hearing, a defendant "may confront and cross-examine adverse witnesses unless the [trial] court finds good cause for not allowing confrontation." N.C.G.S. § 15A-1345(e) (2019). While N.C.G.S. § 15A-1345(e) confers upon a defendant a right to confrontation, it commits to the discretion of the trial court whether "good cause [exists] for not allowing confrontation." N.C.G.S. § 15A-1345(e) (2019).

¶ 25 Lieutenant Thompson testified he oversaw two purchases in March 2018 with a paid informant. Before Lieutenant Thompson provided details about the purchases, Defendant objected to Lieutenant Thompson's testimony:

> [DEFENSE COUNSEL]: Your Honor, objection. I realize the Rules of Evidence don't apply in probation violation cases, but we do have some very fundamental constitutional rights, including due process, equal protection, and confrontation.
>
> And if [the State is] soliciting hearsay about a [purchase] from an officer who wasn't present at the [purchase], it's hearsay, and it denies [Defendant] the right to confront the accuser, who would be the person that allegedly bought the narcotics from [Defendant]. And that's a fundamental problem.

> I recognize that -- but it's just no right of confrontation to bring an officer in and say, ["]I know there was a [purchase] and so-and-so bought such and such from somebody.["]  I don't believe that due process and equal protection -- even though we do know that the Rules of Evidence don't apply to probation matters, it's just a - - it's a fundamental constitutional right.

The trial court overruled Defendant's objection and Lieutenant Thompson began to testify.  Defendant objected again:

> [THE STATE:] And how much was given on that day at that time, the 12:00 hour?
>
> [LIEUTENANT THOMPSON:] At that time, $200[.00].
>
> [THE STATE:] $200[.00]. Okay.  And that [paid informant] was whom?
>
> . . .
>
> [LIEUTENANT THOMPSON:] [Paid informant's name].
>
> [THE STATE:] And [the paid informant], she was searched before and after the [purchase]?
>
> [LIEUTENANT THOMPSON:] Yes, sir -- I mean, yes, ma'am.
>
> [THE STATE:] And the vehicle that she rode in was searched before and after?
>
> [LIEUTENANT THOMPSON:] Yes, ma'am.
>
> [THE STATE:] And did she return and turn over any contraband or evidence to the detectives?
>
> [LIEUTENANT THOMPSON:] Yes, ma'am.

> [THE STATE:] And what was seized?
>
> [LIEUTENANT THOMPSON:] A white powder substance.
>
> [THE STATE:] Okay. And was that what was the agreed-upon transaction between the [paid informant] and the target, [Defendant]?
>
> [LIEUTENANT THOMPON:] Yes, ma'am.
>
> [DEFENSE COUNSEL]: Objection. That's hearsay.
>
> THE COURT: Hearsay is admissible. Overruled.
>
> [DEFENSE COUNSEL]: By the confrontation, Your Honor; we don't have this lady here to confront.
>
> THE COURT: *State v. Murchison*. Again, understanding the nature of these proceedings, the [trial court] overrules the objection.

The State, in reliance on *State v. Jones*, 269 N.C. App. 440, 838 S.E.2d 686 (2020),[2] contends Defendant did not request testimony from the paid informant or subpoena the paid informant to testify at the probation revocation hearing. However, we need not extend the rationale of *Jones* where, as here, there is no evidence to suggest Defendant knew the State would be offering testimony involving a paid informant, nor is there any evidence in the Record to suggest Defendant knew the

---

[2] A petition for discretionary review has been filed and is currently pending before the North Carolina Supreme Court, No. 85P20.

paid informant existed.[3]  Further, without knowledge of the paid informant's identity, Defendant would have no way to issue a subpoena, let alone serve one, or request the trial court to issue a material witness order in accordance with N.C.G.S. § 15A-803. *See* N.C.G.S. § 15A-803(a) (2019) ("A judge may issue an order assuring the attendance of a material witness at a criminal proceeding.  This material witness order may be issued when there are reasonable grounds to believe that the person whom the State or a defendant desires to call as a witness in a pending criminal proceeding possesses information material to the determination of the proceeding and may not be amenable or responsive to a subpoena at a time when his attendance will be sought.").  Such an application of *Jones* would be in direct conflict with general principles of due process.

¶ 27    We believe the trial court's denial of Defendant's objection because of "the nature of these proceedings" was an indication that it did not exercise its discretion to decide whether good cause exists under the facts of this case.  *See State v. Lang*, 301 N.C. 508, 510-11, 272 S.E.2d 123, 125 (1980) (holding the trial court judge did not exercise his discretion when he denied the jury's request for a transcript by stating "the transcript is not available to the jury").  Based on the Record before us, we cannot determine whether the trial court abused its discretion in determining

---

[3] The Concurrence discusses a "search warrant," which is not included in the Record on appeal.

whether good cause exists because the trial court did not exercise its discretion to begin with.

¶ 28        Lieutenant Thompson's paid informant was an adverse witness who did not testify. Pursuant to N.C.G.S. § 15A-1345(e), the trial court was required to make a finding of good cause before denying Defendant's statutory right to confront and cross-examine an adverse witness. N.C.G.S. § 15A-1345(e) (2019); *see State v. Morgan*, 372 N.C. 609, 616, 831 S.E.2d 254, 259 (2019) ("[W]hen the General Assembly has inserted the phrase 'the court finds' in a statute setting out the exclusive circumstances under which a defendant's probation may be revoked, the specific finding described in the statute must actually be made by the trial court and such a finding cannot simply be inferred from the record."). The trial court's ruling contained no findings referencing the existence of good cause and it is unclear from the face of the Record whether the trial court required a showing of good cause when it denied Defendant the right to confront the paid informant. We are unable to determine if the trial court abused its discretion in determining whether good cause exists for not allowing confrontation, and we must remand to the trial court for consideration of the issue. On remand, the trial court shall exercise its discretion in determining whether good cause exists for not allowing Defendant to confront and cross-examine the paid informant, and make findings in accordance with the requirements of N.C.G.S. § 15A-1345(e).

**CONCLUSION**

We reverse that portion of the order finding Defendant's positive drug test was an adequate ground for revoking his probation. Defendant's probation could only be revoked for a violation of N.C.G.S. § 15A-1343(b)(1). There was sufficient evidence linking Defendant to the substances involved in the purchase and identifying the substances as illegal narcotics, and for the trial court to find Defendant was in violation of N.C.G.S. § 15A-1343(b)(1). The trial court did not abuse its discretion in revoking Defendant's probation on those grounds.

However, the trial court did not exercise its discretion when it did not make any findings related to good cause. As the trial court did not make specific findings that denying Defendant the right to confront the paid informant was because of good cause, we remand for further findings pursuant to N.C.G.S. § 15A-1345(e).

REVERSED IN PART; VACATED AND REMANDED IN PART.

Judge DIETZ concurs.

Judge TYSON concurs in part and concurs in the result in part with separate opinion.

TYSON, Judge, concurring in part and concurring in the result in part.

The majority's opinion correctly concludes Defendant did not show any abuse in the trial court's discretion when it found and concluded Defendant had committed new crimes and revoked Defendant's probation in violation of N.C. Gen. Stat. § 15A-1343(b)(1)(2019). Sufficient evidence in the record supports the finding and conclusion Defendant committed new criminal offenses in violation of that statute. I concur with these conclusions of the majority's opinion. I also concur with the majority's opinion, which correctly concludes Defendant's constitutional argument is frivolous.

I also conclude the trial court properly denied Defendant's untimely motion to cross-examine law enforcement's confidential informant ("CI") at his probation violation hearing. The revocation of Defendant' probation based upon his commission of new criminal acts and charges is properly affirmed, even without Sheriff's Lieutenant Thompson's ("Lt. Thompson") testimony, much less the testimony of the CI. Although unnecessary, to affirm Defendant's revocation, I concur in the result to remand for the trial court to enter its "good cause" finding.

Defendant pled guilty to possession with the intent to sell or deliver marijuana in August 2017. He was sentenced to a term of eight to nineteen months in prison, which was suspended, and he was placed upon 24 months of supervised probation. In March 2018, April 2018, and June 2019, his probation officer filed reports citing multiple violations. The first violation alleged Defendant had failed to pay scheduled

fees and had accrued new drug charges. The second violation report alleged he had tested positive for cocaine and had illegally possessed the same. The third violation alleged he failed to report for required appointments and was charged with additional criminal charges. A probation violation hearing was held in August 2019. Defendant denied the allegations in the reports.

¶ 34        At the violation hearing, Defendant's probation officer testified regarding his positive drug tests, the new criminal charges, and the other violations. Lt. Thompson testified regarding two controlled sales and buys between Defendant and a CI. Lt. Thompson did not witness either of the drug sales. Based upon the information obtained through the controlled buys, he secured a search warrant for Defendant's home. Lt. Thompson met with and searched the CI's vehicle before and following the scheduled buys. After he searched the informant's vehicle, he retrieved the leftover marked money, three white rocks, and a bag of a leafy green substance. The State did not call either the CI or the SBI analyst to testify at the violation hearing. Neither witness was subpoenaed by Defendant.

¶ 35        Defendant objected to Lt. Thompson's testimony regarding hearsay from the CI and to the drug lab results. The trial court overruled Defendant's hearsay objection, but it sustained his objection to the lab results. Lt. Thompson testified, based on his training and experience, the leafy green substance recovered was marijuana.

The trial court found Defendant had willfully violated the conditions of his probation as was alleged in the March report by committing new criminal offenses of selling and possessing illegal narcotics. The court also independently found Defendant had willfully violated his probation as alleged in the April report by testing positive for illegal drugs. The court dismissed his remaining violations and orally revoked Defendant's probation on the basis Defendant had committed new criminal offenses. The written order entered recited alternative bases to revoke and activate Defendant's suspended sentences. Defendant timely appealed.

## I. Issue

The issue in this case is whether the trial court's ruling should be affirmed based upon Defendant's waivers and failure to subpoena witnesses, and this Court's precedential opinion and conclusion in *State v. Jones*, 269 N.C. App. 440, 445, 838 S.E.2d 686, 690 (2020).

## II. Analysis

"A proceeding to revoke probation is not a criminal prosecution." *State v. Duncan*, 270 N.C. 241, 245, 154 S.E.2d 53, 57 (1967). N.C. Gen. Stat. § 15A-1345(e) gives a probationer a right to confrontation at a revocation hearing, but it leaves the trial court with discretion to determine whether "good cause" exists for not allowing confrontation. N.C. Gen. Stat. § 15A-1345(e) (2019). The trial court properly exercised its discretion when it denied Defendant's untimely motion.

¶ 39          The State must present competent evidence tending to show a defendant's failure to comply with the terms and conditions of probation to support the trial court's conclusion the defendant has committed a violation that warrants revocation under the statute. *State v. Terry*, 149 N.C. App. 434, 437, 562 S.E.2d 537, 540 (2002). "Once the State has presented competent evidence establishing a defendant's failure to comply with the terms of probation, the burden is on the defendant to demonstrate through competent evidence an inability to comply with the terms." *Id.* at 437–38, 562 S.E.2d 540.

¶ 40          "If the trial court is then reasonably satisfied that the defendant has violated a condition upon which a prior sentence was suspended, it may within its sound discretion revoke the probation." *Id.* at 438, 562 S.E.2d 540.

¶ 41          N.C. Gen. Stat. § 15A-1345(e) is a statutory codification of the probationer's due process right. A probationer's failure to compel or subpoena a witness to attend the violation hearing and be available to testify constitutes a waiver of the statutory right to confrontation. *Terry*, 149 N.C. App. at 438, 562 S.E.2d 540 (the defendant did not at any stage in the proceedings request her professor be subpoenaed nor did defendant suggest the professor had additional information other than what the professor had already reported to the probation officer).

¶ 42          This case is controlled by this Court's precedential holding in *State v. Jones*, 269 N.C. App. at 445, 838 S.E.2d at 690. In *Jones*, the trial court revoked defendant's

probation and activated his suspended sentences after finding the defendant had willfully violated probation by committing new crimes. *Id.*

¶ 43    The defendant in *Jones* pled guilty to possession of a firearm by a felon and discharging a weapon into occupied property. *Id.* at 441, 838 S.E.2d at 687. His sentence was suspended, and he was placed on thirty-six months' supervised probation. *Id.* at 441, 838 S.E.2d at 688. Less than a year later, officers investigating potential criminal activity observed defendant outside a store for about an hour and followed his car. *Id.* The officers conducted a traffic stop after defendant exceeded the speed limit. He failed to present identification after an officer asked him to exit the vehicle. *Id.*

¶ 44    The officer observed and recovered a handgun from inside the vehicle, and placed the defendant under arrest. *Id.* at 441-42, 838 S.E.2d at 688. Defendant Jones filed a motion to suppress. *Id.* at 443, 838 S.E.2d at 688. The arresting officer testified, and the trial court denied Jones' motion. *Id.* at 443, 838 S.E.2d at 689. A probation violation report was filed, alleging he had willfully violated probation by absconding and committing new crimes. *Id.* at 442, 838 S.E.2d at 688.

¶ 45    At the defendant's probation violation hearing, the trial court allowed the transcript of the law enforcement officer's testimony from the suppression hearing to be introduced and admitted. *Id.* at 443, 838 S.E.2d at 688. The defendant appealed and asserted his due process right to confrontation was violated when the officer

whose testimony was used against him was not physically present at his probation violation hearing and "good cause" did not exist justifying the officer's absence. *Id.*

¶ 46 This Court affirmed the trial court's ruling to revoke the defendant's probation. *Id.* at 445, 838 S.E.2d at 690. Nothing in the record showed the defendant in *Jones* had subpoenaed the officer to compel his attendance under N.C. Gen. Stat. § 15A-1345(e) or otherwise sought to assure the officer's presence at the revocation hearing. *Id.* at 445, 838 S.E.2d at 689. The transcript of the officer's testimony offered by the State was held to be competent evidence and was properly admitted to show the defendant had committed new crimes in violation of his probation. *Id.*

¶ 47 Here, the facts are similar to those in *Jones*. Both defendants were afforded their statutory due process rights at their probation violation hearings: (1) to have evidence against them disclosed; (2) the opportunity to appear and speak on their own behalf; and (3) to present relevant evidence under N.C. Gen. Stat. § 15A-1345(e).

¶ 48 Concerning probationers' statutory confrontation rights, the trial court retains discretion to determine "good cause" for not allowing confrontation. N.C. Gen. Stat § 15A-1345(e). Both the defendants here and in *Jones* had the ability to subpoena the State's or their own witnesses but failed to do so. Neither defendant demanded nor objected to a lack of an express finding for "good cause" by the trial court, another waiver of that right.

¶ 49   The State, in both cases, presented sufficient evidence to support the trial court's conclusions the defendants had committed new crimes. This Court, in *Jones*, found the State had shown competent evidence establishing defendant's violation by proof of the new criminal charges and the transcript of the officer's testimony from the suppression hearing. *Jones*, 269 N.C. App. at 445, 838 S.E.2d at 690. The trial court properly acted within its discretion to revoke that defendant's probation. *Id.* at 444, 838 S.E.2d at 690.

¶ 50   Here, the trial court found Defendant had committed new criminal acts and charges had been filed against him. The probation officer's testimony of Defendant's new crimes was sufficient to meet the competent evidence standard under N.C. Gen. Stat. § 15A-1345(e) to revoke Defendant's probation. The majority's opinion suggests no evidence shows Defendant knew the State could potentially offer testimony involving the CI or that the CI even existed to justify the remand.

¶ 51   This notion is contradicted by the filed and served probation violation reports and Defendant's underlying knowledge of the basis of the new charges filed against him. Defendant was made aware of the nature of the charges brought against him through the warrant to search his home based upon the controlled buys with the CI and the subsequent felony charges and indictments served upon him.

¶ 52   The majority's opinion correctly concludes Defendant's constitutional argument is frivolous. A probation violation hearing is not a criminal prosecution,

and a constitutional right to confrontation in a revocation hearing does not exist. *State v. Braswell*, 283 N.C. 332, 337, 196 S.E.2d 185, 188 (1973) (citation omitted). Although N.C. Gen. Stat. § 15A-1345(e) allows the trial court to make a finding of "good cause" to deny the opportunity for confrontation, the statute does not require the court to do so to avoid reversible error, particularly where a defendant has the burden on appeal to show prejudice, failed to subpoena the witness, or has waived his rights by failure to object. *See Jones*, 269 N.C. App. at 444, 838 S.E.2d at 690.

¶ 53 Even if Defendant had timely objected, he has failed to show any prejudice as the trial court correctly found the State had provided competent evidence based upon the violation reports, the probation officer's testimony, and the new criminal charges alone. Lt. Thompson's testimony, much less any appearance by the CI, was unnecessary to the other competent evidence admitted to uphold Defendant's revocation. *See Jones*, 269 N.C. App. at 445, 838 S.E.2d at 689. Defendant's arguments are without merit.

## III. Conclusion

¶ 54 Defendant failed to subpoena witnesses, waived any objection, and has not carried his burden to show prejudice. This Court's ruling in *Jones* is binding precedent upon these facts and the order entered. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). The trial court did not err by revoking his probation and activating his suspended sentence. The order is properly affirmed.